UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

THOMAS ANDREW GARDNER,

                1:16-cv-04567-NLH

        Plaintiff,

                **OPINION**

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

**APPEARANCES:**

ALAN H. POLONSKY
POLONSKY AND POLONSKY
512 S WHITE HORSE PIKE
AUDUBON, NJ 08106
    On behalf of Plaintiff

GREGG WARNER MARSANO
OFFICE OF GENERAL COUNSEL
SOCIAL SECURITY ADMINISTRATION
P.O. BOX 41777
PHILADELPHIA, PA 19101
    On behalf of Defendant

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. § 401, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not

disabled at any time since his alleged onset date of disability, October 16, 2012. For the reasons stated below, this Court will affirm the ALJ's decision.

## I. BACKGROUND AND PROCEDURAL HISTORY

On November 19, 2012, Plaintiff, Thomas Andrew Gardener, who was thirty-nine years old at the time, applied for benefits alleging disability since October 16, 2012. Plaintiff's impairments include degenerative disc disease of the thoracic and lumbar spine, status post multilevel compression fracture of the thoracic spine, status post Achilles tendon repair on right ankle, asthma, obesity, major depressive disorder, and panic disorder. Plaintiff previously worked as a floor technician/cleaner.

After the state agency denied Plaintiff's application twice, Plaintiff requested an administrative hearing. A hearing before an ALJ was held on September 29, 2014. On January 23, 2015, the ALJ issued his decision, which determined that Plaintiff was not disabled. On May 11, 2016, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. Plaintiff brings this civil action for review of the Commissioner's decision.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.

1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is

> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.  Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable

5

physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the

>            claimant will be found "disabled."
>
>     4.    If the claimant can still perform work he has done in
>           the past ("past relevant work") despite the severe
>           impairment, he will be found "not disabled."
>
>     5.    Finally, the Commissioner will consider the claimant's
>           ability to perform work ("residual functional
>           capacity"), age, education, and past work experience
>           to determine whether or not he is capable of
>           performing other work which exists in the national
>           economy. If he is incapable, he will be found
>           "disabled." If he is capable, he will be found "not
>           disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v.

Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability, October 16, 2012.  At step two, the ALJ found that Plaintiff's impairments of degenerative disc disease of the thoracic and lumbar spine, status post multilevel compression fracture of the thoracic spine, status post Achilles tendon repair on right ankle, asthma, obesity, major depressive disorder, and panic disorder were severe.  At step three, the ALJ determined that Plaintiff's severe impairments or his severe impairments in combination with his other impairments did not equal the severity of one of the listed impairments.  For step four, the ALJ determined that Plaintiff could not perform his past work as a floor technician/cleaner, but found that Plaintiff retained the residual functional capacity to work at the sedentary level[1] with certain restrictions in jobs such as

---

[1] See 20 C.F.R. § 404.1567(a) ("Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.")

8

lens inserter, surveillance system monitor, and folder (step five). Accordingly, the ALJ found that Plaintiff was not disabled.

Plaintiff presents two areas where he claims the ALJ erred in his analysis:

> 1. The ALJ erred in his residual functional capacity ("RFC") analysis when he did not properly assess Plaintiff's mental limitations.
>
> 2. The ALJ erred in finding significant jobs in the national economy existed for Plaintiff with his RFC.

The Court finds that the ALJ did not err in these two ways, and holds that substantial evidence supports the ALJ's decision that Plaintiff retains the residual functional capacity to perform sedentary work with certain limitations.

First, with regard to Plaintiff's challenge to the ALJ's RFC assessment, in making a RFC determination, the ALJ is required to do the following:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. By objective medical evidence, we mean medical signs and laboratory findings . . . . By other evidence, we mean . . . . statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. . . .

20 C.F.R. § 404.1529.  The RFC reflects "what [the claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a), and the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c).

Plaintiff argues that the ALJ failed to fully consider Plaintiff's mental impairments in determining that Plaintiff retained the RFC to perform sedentary work with occasional interaction with the public and co-workers.  Plaintiff argues that his extreme anger and fear of strangers, in addition to his diagnoses of major depression and panic disorder, preclude that RFC finding.

The Court disagrees with Plaintiff's view of the ALJ's decision.  In a well-reasoned analysis supported by documentary evidence, the ALJ's analysis of Plaintiff's mental impairments spans several pages.  In that analysis, the ALJ noted that Plaintiff began treatment for his mental impairments in April 2013, which was after his initial claim for benefits was denied. The ALJ recognized that in April 2013 Plaintiff reported "breakdowns inside his head," increased panic if he was in a room with more than eight or nine people, trouble sleeping,

intermittent passive suicidal thoughts, mood swings, verbal outbursts, and poor memory on his initial evaluation by a mental health professional, all of which his wife corroborated. Additionally, the ALJ noted that at that time Plaintiff was assessed a GAF of 45, which suggests serious impairment.[2] (R. at 26.)

However, the ALJ noted that over the course of treatment

---

[2] The GAF Scale ranges from zero to one-hundred. An individual's "GAF rating is within a particular decile if either the symptom severity or the level of functioning falls within the range.":

> A GAF of 51-60 is "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g.. few friends, conflicts with peers or co-workers)."
>
> A GAF of 31-40 is "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."
>
> A GAF of 21-30 is "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) ("DSM–IV–TR") p. 34.

and proper medication, by June 2013 Plaintiff's mental status evaluations were within normal ranges, including improved mood, cooperative behavior, unimpaired memory and attention span, and good insight and judgment, and he had been discharged from treatment for meeting his treatment goals. (R. at 27.) His GAF at discharge was 54, evidencing only moderate symptoms. The ALJ further noted that during Plaintiff's treatment for his physical impairments throughout 2014, the medical records relate that Plaintiff presented as cooperative, well-groomed with normal speech, and no psychiatric deficits were observed. (Id.)

In addition to the ALJ's observations of Plaintiff's improving mental impairments, the ALJ actually discounted the state consultative examiner's findings that determined that Plaintiff suffered from mental limitations less severe than the ALJ found was otherwise demonstrated in the record. For example, when a state consultative psychological examination was conducted by Dr. Bogacki in February 2013, Dr. Bogacki found that Plaintiff only suffered from mild depressive disorder, schizoid personality traits, and a learning disorder, and assessed Plaintiff a GAF of 65, which evidences only mild limitations. (R. at 26.) The ALJ afforded Dr. Bogacki's assessment little weight because it was based on a one-time

12

examination, there was no corroborative evidence of a learning disability, and subsequent treatment records showed that Plaintiff had more than mild psychological symptoms. (R. at 26.) The ALJ similarly discounted two additional state agency psychologist assessments because they also found that Plaintiff did not suffer from more than mild limitations, and the record evidence demonstrated that Plaintiff's mental impairments were actually more severe. (R. at 28.)

Often, a claimant whose claim for benefits has been denied argues that an ALJ improperly afforded greater weight to the state consultative examiners' assessments than the claimant's own treating physicians' assessments. See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citations and quotations omitted) ("A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time. Where [] the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason."). Here, however, the ALJ found the opposite, and

essentially credited all of Plaintiff's evidence regarding his mental impairments over the opinions of the consultants.  In doing so, the ALJ also properly explained why the medical evidence did not fully support Plaintiff's contention that his mental impairments were as debilitating as he claimed.  (R. at 28-29.)  Accordingly, the ALJ placed the following restrictions on Plaintiff's RFC:  "occasional interaction with coworkers and supervisors, and no interaction with members of the public."  (R. at 23.)  The ALJ's RFC assessment, therefore, was based on substantial evidence and must be affirmed.

The second basis for Plaintiff's appeal is that the ALJ erred in finding that significant jobs exist in the national economy that Plaintiff was capable of performing with his particular RFC.  The ALJ determined that Plaintiff was capable of sedentary work that is unskilled and involved routine and repetitive tasks with occasional changes in the work setting, but that the work could not involve quotas or was production based rather than goal orientated work.  (R. at 23.)  Based on these limitations, as well as the other RFC limitations related to Plaintiff's physical and mental impairments, the Vocational Expert ("VE") offered three positions that could be performed by a person with Plaintiff's RFC, age and experience:  lens

inserter, surveillance system monitor, and folder.  (R. at 29-30.)

Plaintiff argues that the jobs suggested by the VE do not allow for his limitations.  Plaintiff argues that a lens inserter and folder are assembly line jobs that involve quotas and are production based.  Plaintiff also argues that the surveillance system monitor job is not unskilled work.

The Court does not find any merit to Plaintiff's argument. The Dictionary of Occupational Titles defines the three jobs as follows:

> 713.687-026 LENS INSERTER (optical goods) alternate titles: roll-over loader - Fits lenses into plastic sunglass frames and places frames on conveyor belt that passes under heat lamps which soften frames preparatory to setting of lenses.
>
> 685.687-014 CUFF FOLDER (knitting) alternate titles: cuff turner - Folds cuffs preparatory to sewing cuffs to sleeves of knitted garments: Lays flat cuff on table and folds cuff in half or pulls tubular cuff over cone-shaped form and turns cuff half-way back, matching edges.  Stacks folded cuffs.
>
> 379.367-010 SURVEILLANCE-SYSTEM MONITOR (government ser.) Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action: Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to improve reception, and notifies repair

service of equipment malfunctions.

Dictionary of Occupational Titles, available at 1991 WL 645958.

Other than Plaintiff's interpretation of these jobs, there is no support in the record that these positions do not match Plaintiff's RFC. Plaintiff does not provide any support for his contention that the lens inserter and cuff folder positions are "production" based (excluded by the RFC) and not "goal orientated" (permitted by the RFC).[3] Even if they were,

---

[3] See, e.g., Butler v. Colvin, 2015 WL 570167, at *7 (D.N.J. 2015) ("The VE explained the distinction between 'production paced' and 'goal-oriented' as the difference between needing to produce a certain number of products in a given time period (production paced) versus quality control (goal-oriented)," and provided an example: "a job as a mail clerk in a post office would be a production paced job because of the need to process a high volume of mail, whereas a job as a mail clerk in a private sector office such as an attorney's office would be goal-oriented because of the lesser pace"); Martell v. Colvin, 2015 WL 1310269, at *7 (D.N.J. 2015) ("At the hearing, the VE explained that production-paced work involves a job where you complete a task in order for it to move to the next employee, such as an assembly line worker. She described goal-oriented as more independent, where 'you're given a job to do, and you just perform that.'"); Gropp v. Astrue, 2009 WL 5103619, at *2 (W.D. Ky. 2009) ("Claimant apparently is arguing that the ALJ's limitation of 'simple, repetitive tasks but no production or rate paced work rather only goal oriented work' would preclude any work where there is even a minimal expectation of production. Such an interpretation of 'only goal oriented work' would defy logic and most any definition of productive employment. While there may not be mandatory production or rate paced work, it stands to reason that all jobs require at least some minimum level of productivity from employees.").

Plaintiff does not provide any support for his view that a surveillance system monitor is more than unskilled work.[4] To support the Step Five determination, the ALJ is only required to identify a single job within the claimant's capacity that exists in significant numbers in the national economy. <u>Lippincott v. Commissioner of Social Sec.</u>, 982 F. Supp. 2d 358, 384 (D.N.J. 2013) (citing 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations)."); 20 C.F.R. § 416.966(b) (same)).

The ALJ asked the VE whether these jobs conflicted with Plaintiff's RFC, and she testified that they did not. (R. at 76.) Based on that testimony, the ALJ concluded that the VE's testimony was consistent with the DOT, and that the number of jobs cited exist in significant numbers. (R. at 30, citing SSR 00-4p, "When a VE or VS provides evidence about the requirements

---

[4] See, e.g., <u>Hume v. Berryhill</u>, 2017 WL 3978392, at *10 (D. Or. 2017) (VE testifying that surveillance system monitor is sedentary, unskilled work); <u>Strong v. Colvin</u>, 2016 WL 4708491, at *4 (E.D. Cal. 2016) (same); <u>Corbett v. Barnhart</u>, 2006 WL 5527015, at *26 (N.D.W. Va. 2006) (VE testifying: "Jobs would include surveillance system monitor with 105,000 nationally, 3,000 in Virginia and sedentary assembler with 50,000 nationally, 1,500 in Virginia. Those are sedentary, unskilled jobs," and the court finding "the job of surveillance system monitor, with an SVP of 2, is consistent with the ALJ's hypothetical requiring the work to be 'unskilled'"); <u>Merrill v. Astrue</u>, 2007 WL 922254, at *4 (D. Me. 2007) (stating that the surveillance system monitor job is unskilled).

of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will: Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.").

The ALJ satisfied his obligations at step five by identifying jobs in significant numbers that do not conflict with Plaintiff's RFC, and by determining that Plaintiff, with his specific RFC, was capable of performing other work that exists in significant numbers in the national economy.

### III. Conclusion

For the reasons expressed above, the ALJ's determination that Plaintiff is not totally disabled is supported by substantial evidence. The decision of the ALJ is therefore affirmed.

An accompanying Order will be issued.


Date: September 28, 2017         s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.